# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DIEDRE TOWNSEND-TAYLOR
and RONNIE TAYLOR,

              **Plaintiffs,**

    **v.**                                    **Case No. 05-C-952**

AMERITECH SERVICES, INC.,

              **Defendant.**

## DECISION AND ORDER

      The plaintiffs, Diedre Townsend-Taylor ("Townsend-Taylor") and Ronnie Taylor ("Taylor") (collectively the "Plaintiffs") sued their former employer, Ameritech Services, Inc. ("Ameritech") for alleged violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"). Pending before the Court is Ameritech's motion for summary judgment and the Plaintiffs' motion for partial summary judgment.

### BACKGROUND

      Diedre Townsend-Taylor and Ronnie Taylor are married and both worked for Ameritech prior to being discharged in 2004 for unsatisfactory attendance. Townsend-Taylor worked as a sales representative and Taylor worked as a maintenance administrator.

Ameritech provides telecommunication services, and is a subsidiary of AT& T, Inc., formerly known as SBC Communications, Inc. ("SBC").[1]

## Ameritech's Attendance Policy

Ameritech had a Local Service Center/Local Operations Center Attendance Policy ("Attendance Policy") that applied to the Plaintiffs in 2003 and 2004. The Attendance Policy defined a "tardy" as a period of absence of less than two hours after the start of an employee's shift, and an "incidental absence" as a period of absence that is more than two hours. If an employee had more than two cases of tardiness or incidental absences, his attendance was considered unsatisfactory and triggered a progressive discipline program. The progressive discipline entailed a written warning, then a one-day suspension, and finally a suspension pending termination. Absences that are covered by the FMLA were not considered for disciplinary purposes.

## Ameritech's Procedure for Processing FMLA Requests

Whenever employees requested leave under the FMLA, their managers completed an "FMLA Eligibility Form" (the "Eligibility Form"). The Eligibility Form stated whether the employee was eligible for FMLA leave, how much FMLA leave the employee had taken in the current year, and the dates of and reason for the employee's absence. The managers would then send the Eligibility Form to the FMLA Processing Unit ("FPU") in San Antonio, Texas, and provide a copy to the employees.

---

[1] For the sake of clarity, "SBC" will be referred throughout this opinion as "Ameritech."

The employees also were provided a "Certification of Health Care Provider" (the "Certification Form") each time they requested FMLA leave. The Certification Form contained the employee's preprinted name, company identification number, and a bar code that represents the employee's social security number. To the left of the bar code, the Certification Form had the date the form was generated and printed.

The Plaintiffs understood that they were responsible to have the Certification Form submitted within fifteen days after receiving it. The Certification Form itself stated: "This form must be completed and either faxed . . . or mailed no later than 15 calendar days from the date the employee received this form." In addition, the Eligibility Form provided:

> It is the employees' responsibility to make sure the medical certification is received in the FMLA office within 15 consecutive calendar days. Requests for FMLA will not be validated if the medical certification is not received within the specified time frame. Under certain circumstances, an extension may be granted during the appeal process. The employee should call the FMLA office if an extension is needed.

The FPU also gave employees an additional five-day grace period to submit the Certification Form to their office.

If the Certification Form was received by the FPU within twenty days of the employee's receipt of it, a case manager at the FPU determined whether the information provided substantiated the employee's need for FMLA leave. If the case manager determined that the employee qualified for FMLA leave, the FPU would send the employee a letter informing him that his absence was FMLA-covered. On the other hand, if the case manager determined that the Certification Form was deficient, the FPU would send the employee an "initial denial" letter notifying the employee of the deficiencies and give the

3

employee an additional twenty days to submit an adequate Certification Form. If the employee failed to submit an adequate Certification Form within the second twenty day period, the FPU would send the employee a "final denial" letter notifying him that his absence was not FMLA-covered.

When the employee did not submit the Certification Form within the first twenty day period, the FPU would send the employee a "final denial" letter denying the employee's FMLA request because the Certification Form was not received by the deadline. The employee then would have fifteen days to advise the FPU of extenuating circumstances that prevented him from timely submitting the Certification Form.

Ronnie Taylor's Absences and Termination

On January 27, August 2, and August 5, 2003, Ronnie Taylor arrived at work late, and in all three instances he was deemed tardy. Because he exceeded his threshold of two incidents of tardiness in a 12 month period, Ameritech gave Taylor a written warning for unsatisfactory attendance. On December 15, 2003, Taylor again arrived at work late, so Ameritech gave him another written warning.

On January 3, 2004, Taylor arrived at work late by 53 minutes. On January 5, 2004, Taylor logged in late again, this time by six minutes. As a result of these two additional incidents of tardiness, Ameritech gave Taylor a one day suspension.

The February 18, 2004 Absence

4

On February 18, 2004, Taylor was absent the entire day to take his daughter, Kayla, to see Dr. Solberg because she had an ear ache. Dr. Solberg saw Kayla at 2:10 p.m. for about 10 to 15 minutes, at which time he diagnosed an ear infection. The following day, February 19, 2004, Taylor returned to work and received a Certification Form. The Certification Form indicated that the FPU had to receive a completed form by March 5, 2004.

On February 25, 2004, the FPU received a Certification Form relating to Taylor's absence, but it did not contain any dates of incapacitation. The FPU sent Taylor an "initial denial" notice the next day, on February 26, 2004, that stated that the Certification Form only listed an office visit, and that he was only authorized up to four hours of leave for an office visit. The notice further provided that Taylor had until March 12, 2004, to submit another Certification Form.

On March 15, 2004, Taylor called the FPU and requested an extension of time to submit the Certification Form. The FPU granted Taylor's request, and extended the deadline to March 19, 2004.

On March 26, 2004, the FPU sent Taylor a final denial notice that stated his request for FMLA coverage was denied because the FPU did not receive a Certification Form by the extended deadline. The notice further stated that if his FMLA leave request was denied due to circumstances beyond his control, he had fifteen days from the date of the letter to submit proof of extenuating circumstances.

Taylor's February 18 absence was deemed a chargeable occurrence under the Attendance Policy. On March 30, 2004, Taylor was considered tardy by seven minutes. As

5

a result of the absence and the additional incident of tardiness, Taylor received another one day suspension.

On April 23, 2004, more than a month after the due date, the FPU received another Certification Form pertaining to Taylor's February 18 absence. It was identical to the form the FPU received on February 25. On April 27, 2004, the FPU responded by sending Taylor a letter stating that it had received the Certification Form on April 23, but that it was submitted beyond the due date, so the final denial stood.

On April 28, 2004, the FPU received a third Certification Form that was identical to the form it received on February 25 and April 23. The FPU again responded with a letter that stated the Certification Form was submitted past the extended deadline and the denial of his FMLA coverage remained unchanged.

The April 21, 2004 Absence

On April 21, 2004, Taylor claims that he took his daughter, Leajona, to see Dr. Solberg for her sprained ankle. When Taylor returned to work on April 22, 2004, Taylor's supervisor gave him a Certification Form to submit by May 7, 2004. On May 13, 2004, the FPU sent Taylor a final denial notice that stated his request for FMLA coverage was denied because the FPU did not receive the Certification Form by the May 7 deadline. The letter further provided that if the denial of his FMLA request was due to circumstances beyond his control, he had fifteen days to submit proof of extenuating circumstances.

6

On May 26, 2004, the FPU received a Certification Form that was signed by Dr. Solberg on May 24, 2004. Dr. Solberg indicated on the Certification Form that he saw Leajona on April 21, 2004.[2]

On May 28, 2004, the FPU sent Taylor a letter that stated the final denial remained unchanged because the Certification Form was filed late. Because the absence was a chargeable occurrence under the Attendance Policy, Taylor was given a three day suspension for unsatisfactory attendance.

On June 8, 2004, the FPU received a letter from Dr. Solberg that stated:

> I am writing this letter on behalf of Deidre Taylor and her daughter, Leajona D. Townsend. Leajona presented with a foot injury on 4/19/04, had xrays [sic] done and was determined to have a metatarsal contusion. This injury required rest and absence from school for 2 additional days (4/20/04 and 4/21/04). Due to this course of treatment, one of her parents needed to be home with her each day. I have filled out FMLA papers for this occurrence on 5 separate occasions and either faxed them to the SBC office or gave them directly to the parents.

On June 9, 2004, the FPU sent Taylor a letter that stated Dr. Solberg's letter did not provide extenuating circumstances explaining why the Certification Form was not received by the May 7 deadline, and as such, it would not reconsider his FMLA request.

The April 26 to April 30, 2004 Absences

Taylor was absent from work the week of April 26 to April 30, 2004, to care for his son, Rontae, who was suffering from herpangina. Herpangina is a viral infection of the

---

[2] However, in his deposition, Dr. Solberg denied he saw her on that day and believed the date on the Certification Form was an error.

throat.  When Taylor returned to work on May 3, 2004, Taylor's supervisor gave him a Certification Form to submit by May 18, 2004.

On May 24, 2004, the FPU sent Taylor a notice that stated his request for FMLA coverage was denied because it had not received a Certification Form by the May 18 deadline.  The letter further provided that if the denial was due to circumstances beyond his control, he had fifteen days to submit proof of extenuating circumstances.

On June 8, 2004, the FPU received another letter from Dr. Solberg that stated:

> I am writing this letter on behalf of Ronnie Taylor and his son, Rontae Taylor. Rontae presented to Children's Hospital of Wisconsin on 4/25/04 with severe mouth pain, poor feeding and fever.  He was diagnosed with Herpangina and required significant parental intervention to keep him well hydrated.  He was seen in my office on 4/28/04 with the same diagnosis but progressively worse feeding.  He required codeine for pain relief and continued intervention from parents to keep him well hydrated for the next 4 days (through 5/2/04).  I have filled out FMLA papers for this occurrence on at least 3 separate occasions and either faxed them to the SBC office or gave them directly to the parents.

On June 9, 2004, the FPU sent Taylor a letter that stated Dr. Solberg's letter did not provide extenuating circumstances explaining why a Certification Form was not received by the deadline, and therefore, it would not reconsider his FMLA request.

Taylor's absences during the week of April 26 to April 30, 2004, was deemed a chargeable occurrence under the Attendance Policy.  As a result, Taylor was suspended pending termination.  On August 5, 2004, a union-management review board meeting was held with respect to Ameritech's contemplated termination of Taylor's employment.  Taylor had union representation and the opportunity to argue why he should not be discharged. After the hearing, Ameritech terminated Taylor's employment for unsatisfactory attendance.

8

## Diedre Townsend-Taylor's Absences and Termination

From June 23 to June 25, 2003, Townsend-Taylor was absent for three full days due to an alleged illness, and requested FMLA coverage for her absence. Ameritech denied her coverage because she had already exhausted her 12 weeks of FMLA leave for a 12 month period. As a result of her absences on June 23 to June 25, 2003, Ameritech gave her a written warning that her attendance was unsatisfactory.

On November 20, 2003, Townsend-Taylor arrived at work late. Her tardy arrival resulted in her receiving the next step of attendance discipline, which was a one day suspension.

On November 24, 2003, Townsend-Taylor was absent for part of the day to take her son and daughter to their pediatrician, Dr. Matthew Solberg. She requested FMLA leave to cover the absence. She had already exhausted her 12-week federal FMLA allotment, but she still had 15.25 hours worth of time under the Wisconsin FMLA. After her absence, Townsend-Taylor's supervisor gave her a Certification Form to be filled out and returned by December 9, 2003. Townsend-Taylor failed to return the form by that date. While Ameritech could have moved to the next disciplinary step by giving her a suspension pending termination, Ameritech instead just gave her another one day suspension.

On December 3 and December 4, 2003, Townsend-Taylor was absent for two days to care for her daughter. The FPU granted her FMLA request for the remaining 15.25 hours she had left under the Wisconsin FMLA, but the FPU informed Townsend-Taylor that the remaining .75 hours of her 16 hours of absence were denied FMLA coverage because she

9

exhausted her leave allotment under both the federal FMLA and the Wisconsin FMLA. Ameritech gave her another one day suspension, even though the Attendance Policy would have allowed Ameritech to give her a suspension pending termination.

From March 16 to March 18, 2004, Townsend-Taylor was absent for three full days, and again requested FMLA leave to cover her absence. Dr. Ellen Leeney saw Townsend-Taylor on March 16, 2004, and diagnosed her as having acute sinusitis, vaginitis, and a muscle spasm in her back. On March 17, 2004, Townsend-Taylor called Dr. Leeney for a medical excuse to be absent from work, but Dr. Leeney was not willing to give her an excuse for three days of absence because Dr. Leeney did not think it was necessary.

When Townsend-Taylor returned to work, she obtained a Certification Form that had a due date of April 3, 2004. On April 6, 2004, Dr. Leeney signed the Certification Form that stated that Townsend-Taylor was incapacitated from March 16 to March 19. Dr. Leeney was not aware that Townsend-Taylor filled in those dates on the form.

On April 9, 2004, Ameritech denied Townsend-Taylor's FMLA request because she did not submit a timely medical certification. Ameritech gave her until April 24, 2004, to submit proof of extenuating circumstances that prevented her from submitting the Certification Form by the deadline.

On April 12, 2004, Advanced Healthcare, which processed FMLA medical certification forms for Dr. Leeney, sent the FPU a letter explaining how it generally processes FMLA certification forms. The FPU found that this explanation was insufficient because it

only generally explained how Advance Healthcare processed forms, and it did not explain why Townsend-Taylor did not submit a timely form in her particular case.

On April 19, 2004, the FPU received a letter from Dr. Leeney in which she explained that she only works three days a week, which often can slow the process of completing FMLA forms. On April 21, 2004, the FPU informed Townsend-Taylor that the explanation from Dr. Leeney was not sufficient to warrant the delay, and thus it denied her FMLA request. As a result, Townsend-Taylor was suspended pending termination. After conducting a review of Townsend-Taylor's absences, and after having a review board meeting at which Townsend-Taylor's union was able to present her case, Ameritech terminated her employment for unsatisfactory attendance.

## STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court takes all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden, the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for

11

trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

### DISCUSSION

The FMLA entitles an employee up to 12 weeks of leave during any 12-month period because of a serious health condition that would make him unable to perform his duties at work. 29 U.S.C. § 2612(a)(1)(D). The statute also provides leave for employees to care for their immediate family members' serious health condition. 29 U.S.C. § 2612(a)(1)(C). A "serious health condition" is an illness resulting in more than three consecutive days of incapacity and requiring treatment at least two times by a health care provider, or treatment at least once by a health care provider that results in a regimen of continuing treatment. 29 C.F.R. § 825.114(a). Employers are prohibited to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. § 2615(a)(1).

At the conclusion of a qualified-leave period, an employee is entitled to return to his former position, or to an equivalent one, with the same terms and benefits. 29 U.S.C. § 2614(a)(1). However, the FMLA seeks to accomplish its purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. 2601(b)(3). Accordingly,

12

an employer may have a policy that requires employees to obtain and submit a timely medical certification form supporting their claim of a serious medical condition.

A medical certification form is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(b); 29 C.F.R. 825.306. If the employer "finds a certification incomplete," it must advise the employee of the deficiency and provide the employee a reasonable opportunity to cure it. 29 C.F.R. § 825.305(d).

If the employee's leave is not foreseeable, "the employee must provide the requested certification to the employer within the time frame requested by the employer . . . unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith effort." 29 C.F.R. § 305(b). The employer must allow at least fifteen days for an employee to provide certification. *Id*.

I.    Taylor's Claim of Interference

Taylor alleges that Ameritech improperly interfered with his rights under the FMLA by denying FMLA leave for his absences on February 18, 2004, April 21, 2004, and April 26-30, 2004. The Court will address each period of absence separately.

A.    The February 18, 2004 Absence

On February 18, 2004, Taylor took his daughter to see Dr. Solberg because she had an ear ache. The FPU subsequently received a Certification Form from Dr. Solberg, but it only stated that he had an office visit with Taylor's daughter. It did not indicate the amount of time his daughter would be incapacitated.

13

The Certification Form should have stated the probable duration of Kayla's condition. *See* 29 U.S.C. § 2613(b)(2). Thus, the FPU properly characterized the Certification Form as deficient and provided Taylor additional time to have Dr. Solberg complete the Certification Form.[3]

The FPU gave Taylor an additional fifteen days to submit a completed Certification Form, and Taylor thereafter requested and received a one-week extension of time to submit the Certification Form. However, the FPU did not receive the Certification Form by the extended deadline. Accordingly, the FPU denied Taylor's FMLA leave request.

Ameritech had a right to demand a timely submitted Certification Form, and it provided Taylor ample opportunity to do so. Taylor never presented evidence of any extenuating circumstances that hindered his ability to submit a Certification Form on time. Accordingly, Ameritech did not interfere with Taylor's FMLA right by denying his FMLA leave request. *See Rager v. Dade Behring*, 210 F.3d 776, 778-79 (7th Cir. 2000) (affirming summary judgment for employer because the plaintiff failed to submit a timely certification).

B.      The April 21, 2004 Absence

---

[3] The Plaintiffs' citation of *Harcourt v. Cincinnati Bell Telephone Company*, 383 F.Supp.2d 944, 955 (S.D. Ohio. 2005) in support of their proposition that the Certification Form was sufficient is misleading. The court in *Harcourt* held that a Certification Form "must be accepted by the employer if it contains the information required by the statute and is signed by the employee's health care provider." *Id.* at 955. The statute unambiguously provides that a Certification Form is sufficient if it states "the probable duration of the condition." 29 U.S.C. § 2613(b)(2).

Line 7 of the FPU's Certification Form requests that the physician estimate the amount of time Taylor's daughter would be incapacitated by her condition. Dr. Solberg left that line blank. Accordingly, there can be no doubt that the Certification Form was insufficient. The Plaintiffs' citation to *Harcourt* to refute that inescapable conclusion is misleading.

14

On April 21, 2004, Taylor claims that he took his daughter to see Dr. Solberg for her sprained ankle. When Taylor returned to work the next day, his supervisor gave him a Certification Form that had to be submitted by May 7, 2004. The Certification Form was not submitted by the due date, so on May 13, 2004, the FPU sent Taylor a final denial notice. The notice provided that if the denial was due to circumstances beyond his control, Taylor had an additional fifteen days to submit proof of extenuating circumstances.

On May 26, 2004, the FPU received a Certification Form related to Taylor's absence, but the FPU did not consider it because it was untimely filed. On June 8, 2004, the FPU received a letter from Dr. Solberg in which he stated that he saw Taylor's daughter on April 19, 2004, for her foot injury, and that she had to stay home from school through April 21, 2004. He said that he had filled out FMLA papers for this occurrence on five separate occasions, and either faxed them to the FPU or gave them directly to the Plaintiffs. The FPU did not accept Dr. Solberg's letter as sufficient proof of extenuating circumstances.

The time period for submitting medical documentation must be tolled when the limitation period is "not practicable under the particular circumstances . . . despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). Dr. Solberg's letter did not say anything about Taylor's efforts to timely submit the Certification Form. Also, Dr. Solberg did not indicate whether he faxed the Certification Form prior to the May 7, 2004 deadline, nor why he could not have completed it by that time. Accordingly, Ameritech was not presented a sufficient reason to equitably toll its limitation period, and as such, Ameritech

15

cannot be held liable for a violation of the FMLA by denying Taylor's FMLA leave request. *See Rager*, 210 F.3d at 778-79.

C.     The Absences of April 26 to April 30, 2004

Similar circumstances surrounded Taylor's absences of April 26 to April 30, 2004, when Taylor stayed home to care for his son who was suffering from herpangina. When Taylor returned to work on May 3, 2004, Taylor's supervisor gave him a Certification Form to submit by May 18, 2004. Once again, the FPU did not receive a Certification Form by the deadline, so on May 24, 2004, the FPU sent Taylor a denial notice.[4] The notice provided that if circumstances beyond his control prevented him from submitting a timely Certification Form, he should submit proof within fifteen days of such extenuating circumstances.

Taylor did not submit evidence of extenuating circumstances. Instead, Dr. Solberg sent a letter on June 8, 2004, alleging that on three separate occasions he either faxed or gave the Plaintiffs the Certification Form. His letter did not say whether it was sent to the FPU prior to the May 18 deadline, nor did his letter provide any reasons why he could not have

---

[4] The Plaintiffs allege that the Certification Form was sent to the FPU on May 14, 2004. Their assertion is based on the affidavit of Dr. Solberg's nurse, Michele Regner ("Regner"). However, Regner's affidavit merely states that she "would have faxed" the medical certification "on or around May 14, 2004 or the day after," not that she in fact faxed it on May 14 or the day after.

Furthermore, the Court will grant Ameritech's motion to strike Regner's affidavit because the Plaintiffs did not disclose her as a possible witness. Federal Rule of Civil Procedure 26(a)(1)(A) requires the automatic disclosure of the names of individuals "likely to have discoverable information that the disclosing party may use to support claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Failure to make such disclosure precludes a party from later using that witness in support or in defense of a dispositive motion. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, the Court will grant Ameritech's motion to strike Regner's affidavit.

Either way, though, if Regner faxed the Certification Form to the FPU prior to the May 18, 2004 deadline, that should have been communicated to Ameritech at the time. *Cf. Stoops v. Once Call Communications, Inc.*, 141 F.3d 309, 314 (7th Cir. 1998) ("medical evidence should come from the employee in time to save his job, not during a subsequent lawsuit.").

16

completed it by that time. His letter also did not indicate whether Taylor undertook any efforts at all, let alone "diligent, good faith efforts," to ensure the Certification Form was submitted on time. Accordingly, because the Certification Form was submitted beyond the limitations period, and because Taylor did not provide any proof of extenuating circumstances that prevented him from timely filing the Certification Form, Ameritech was within its right to deny Taylor's FMLA leave request.[5]

## II.    Townsend-Taylor's Claim of Interference

_____ Townsend-Taylor was absent for three days, from Tuesday, March 16 to Thursday, March 18, 2004 because of back pain. She was diagnosed as having acute sinusitis, vaginitis, and a muscle spasm in her back. She requested leave under the FMLA, but the FPU denied her request because her Certification Form was not submitted by the April 3, 2004 deadline.

Ameritech did not interfere with Townsend-Taylor's FMLA right for two reasons. First, she did not have a serious health condition. She was absent for three days from work, yet a serious medical condition occurs when an employee is unable to work for *more* than three days. *See* 29 C.F.R. 825.114(a)(2)(i); *Haefling v. United Parcel Services, Inc.*, 169 F.3d 494, 499 (7th Cir. 1999).[6]

---

[5] Alternatively, Taylor argues that Ameritech violated the FMLA by refusing to allow him to retroactively use vacation to cover his absence when his request for FMLA leave was denied. Taylor supports his novel theory that denial of vacation time is a cognizable claim under the FMLA by citing to 29 U.S.C. § 2515(a)(1). However, Section 2515(a)(1) merely states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." It does not state, as the Plaintiffs contend, that denial of accrued vacation after a FMLA request is denied is a cognizable claim under the FMLA. The Plaintiffs' citation to section 2515(a)(1), therefore, is misplaced, and their argument is without merit.

[6] Townsend-Taylor argues in the alternative that she had a chronic health condition. However,
(continued...)

Second, even if she did have a serious health condition, she did not submit a timely Certification Form. Her Certification Form was due on April 3, 2004, but it was not submitted until April 6, 2004. Townsend-Taylor did not submit any evidence indicating how extenuating circumstances prevented her from timely submitting the form. The letter submitted by Dr. Leeney merely said the process can oftentimes be slow, but she did not say anything about Townsend-Taylor's efforts, or why the form could not have been submitted on time. Accordingly, Townsend-Taylor's claim for interference must be dismissed.

III.    <u>Townsend-Taylor's Retaliation Claim</u>

Townsend-Taylor also avers that she suffered retaliation by Ameritech because of her frequent use of FMLA leave. A retaliation claim under the FMLA is evaluated the same way as a retaliation claim under Title VII of the Civil Rights Act of 1964. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). A plaintiff may prove retaliation using either the direct or indirect methods of proof. *Id*. Under the direct method, the plaintiff must present evidence of a causal connection between her statutorily protected activity and an adverse action taken by the employer. *Id*. Under the indirect method, the plaintiff must first establish a prima facie case that only she, and not any similarly situated employee who did not engage in protected activity, was subject to an adverse employment action even though she was performing her job satisfactorily. *See Stone v. City of Indianapolis Public*

---

[6](...continued)

at the time, Dr. Leeney did not check "chronic" on the second page of the Certification Form she signed relating to Townsend-Taylor's absence, and did not otherwise indicate that Townsend-Taylor's back pain was chronic. "Medical evidence should come from the employee in time to save [her] job, not during a subsequent lawsuit." *Stoops v. Once Call Communications, Inc.*, 141 F.3d 309, 314 (7th Cir. 1998).

18

*Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the plaintiff establishes a prima facie case, then the employer must articulate a non-retaliatory reason for the adverse action. The burden then would fall on the plaintiff to demonstrate that the proffered reason is pretextual. *Id.*[7]

Townsend-Taylor's retaliation claim is clearly without merit. The only evidence Townsend-Taylor presents in support of her claim are notes and e-mails that her supervisor, John Conner, wrote to the FPU and management. Specifically, Conner wrote the following to Jeannette Fitzgerald, of the Human Resources Department, on April 14, 2004:

> We are requesting an escalation on the attached final denial for [Townsend-Taylor]. The attached denial will place the employee at Suspension Pending Termination. This request is being made to assure that the dates will be [sic] remain denied before taking action. Charlotte Loper was contacted on 4/13 and stated that medical documents received 4/12/04 are currently being reviewed. Please advise us of the findings.

Later that day, Conner sent another e-mail to Fitzgerald stating:

> Jeanette, here is the most current denial for Diedre Townsend-Taylor received today. As stated in my earlier letter to you, please confirm that this denial will stand so that we may proceed with the SPT (Suspension Pending Termination) for this employee.

Fitzgerald responded two days later with the following:

> From FMLA, I have reviewed the absence period 3/16-18/04 and the final denial status will be sustained. The health care provider did submit the FMLA4 and extenuating circumstances. However, the information received did not warrant reopening of this case and it will not receive further FMLA consideration.

---

[7] Townsend-Taylor does not indicate which method of proof she wishes to use to prove her retaliation claim.

Townsend-Taylor argues that these e-mails demonstrate that she was terminated in retaliation for applying for FMLA leave.

Townsend-Taylor's argument is unavailing. These e-mails do not, in any way, demonstrate an intent to terminate her because she filed FMLA requests. Rather, they merely show that Conner did not want to suspend Townsend-Taylor pending termination based on the denial of a FMLA request that might later be overturned. Indeed, the FPU implemented an expedited termination review ("ETR") process to prevent such an occurrence.

Because Townsend-Taylor fails to provide any evidence showing that Ameritech terminated her as retaliation for filing FMLA requests, her retaliation claim will be dismissed.[8]

IV.   The Plaintiffs' Request for Injunctive Relief

The Plaintiffs also filed a motion for partial summary judgment seeking to enjoin the "broad based [Ameritech] policies that interfere with their rights under the FMLA." It is already established that none of the Plaintiffs' rights under the FMLA were violated, so the Court must also deny their request to enjoin Ameritech's procedures for processing FMLA requests.

---

[8] Townsend-Taylor also alleges in her response brief that she was denied certain employment training as a result of her requests for FMLA leave. However, she never made this allegation in her complaint. Her claim is an attempt to amend her complaint, which she cannot do in her response brief. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY**

**ORDERED THAT**:

      1.    Ameritech's Motion for Summary Judgment (Docket No. 48) is **GRANTED**.

      2.    Ameritech's Motion to Strike (Docket No. 69) is **GRANTED**.

      3.    The Plaintiffs' Motion for Partial Summary Judgment (Docket No. 54) is **DENIED**.

      4.    The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 18th day of April, 2007.

                                   **BY THE COURT**

                                   s/ Rudolph T. Randa
                                   **Hon. Rudolph T. Randa**
                                   **Chief Judge**

Case 2:05-cv-00952-RTR   Filed 04/18/07   Page 21 of 21   Document 93